IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ASHLEY R.,[1]

    Plaintiff,

v.   Case No. 1:20-cv-01104-KWR-SCY

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,[2]

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Plaintiff Ashley R. argues that the Administrative Law Judge ("ALJ") who denied her claim for disability insurance benefits under the Social Security Act disregarded her treating providers' opinions on the basis of supposedly contradictory evidence in the record that was not, in fact, so contradictory after all. On October 27, 2020, the Honorable Kea W. Riggs referred this matter to me for proposed findings and a recommended disposition under 28 U.S.C. § 636(b). Doc. 7. Because the ALJ's reasons for disregarding the opinions of Plaintiff's treating providers lack substantial evidence, I recommend the Court GRANT Plaintiff's Opposed Motion to Reverse And/Or Remand, Doc. 29, and remand for further proceedings.[3]

---

[1] In the interest of privacy, this PFRD uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

[2] Kilolo Kijakazi was appointed the acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

[3] I reserve discussion of the background, procedural history, and medical records relevant to this appeal for my analysis.

## APPLICABLE LAW

    A.    <u>Disability Determination Process</u>

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

    (1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

    (2)    At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, she is not disabled.

    (3)    At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

    (4)    If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[4] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [she] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

>   most [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.  Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004);

*Casias*, 933 F.2d at 800-01. In making these determinations, the court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

    A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

4

# ANALYSIS

Plaintiff argues that the ALJ erred in disregarding all the treating provider opinions. Doc. 29 at 23. The providers at issue are Eva Velasquez, CNP; Andrea Ensign, CNP; and Nicholas Zamora, MS, LPCC. The ALJ found these opinions to be of limited persuasiveness or unpersuasive 1) because they failed to describe specific functional limitations, 2) because they were inconsistent with evidence of improved functioning when Plaintiff complied with her medication regimen, 3) because they were inconsistent with mostly normal mental status examinations, and 4) because they were inconsistent with Plaintiff's GAF scores of 55.[5] AR 20. I do not find any of these reasons supported by substantial evidence, and I therefore recommend remand.

A.   Standard of review

Plaintiff filed her disability applications after March 27, 2017, and thus the significantly revised rules for medical opinions apply to this case. For claims filed on or after March 27, 2017, all medical sources can provide evidence that is categorized and considered as medical opinion evidence and subject to the same standard of review. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors of supportability and consistency are the most important factors in determining the persuasiveness of a medical opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

---

[5] The ALJ adds that Mr. Zamora's conclusions that Plaintiff cannot work are opinions on an issue reserved for the commissioner. AR 20. This is true. *See* 20 C.F.R. §§ 416.920b(c)(3), 404.1520b(c)(3); *Wade v. Astrue*, 268 F. App'x 704, 706 (10th Cir. 2008) (unpublished). However, including such a conclusion does not permit the ALJ to disregard the opinion out of hand. While a physician's opinion about a claimant's ability to work has no "special significance," *Gutierrez v. Commissioner, SSA*, 799 F. App'x 593, 597 (10th Cir. 2020) (unpublished) (citation omitted), the opinion contains observations and statements beyond that impermissible conclusion that merit consideration. 82 Fed. Reg. 5844, 5851 ("We will not consider an entire document to be a statement on an issue to the Commissioner simply because the document contains a statement on an issue that is reserved to the Commissioner.").

Nonetheless, the nature of substantial-evidence review has not changed in light of the new regulation. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The decision below must provide the court "with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). As United States Magistrate Judge Kirtan Khalsa explained, these "requirement[s] enable[] the courts to engage in meaningful judicial review of agency decisions and thus exist[] independently of agency regulations." *Thompson v. Saul*, No. 20cv672 KK, 2021 WL 2711378, at *8 (D.N.M. July 1, 2021).

In addition, there is no reason to think the regulations altered settled principles of administrative law pertaining to how ALJs review evidence. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ should not ignore relevant evidence or mischaracterize the evidence. *Id.* at 1010 ("Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."); *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (ALJ erred by "ignor[ing] evidence from [a clinical nurse specialist] that would support a finding of disability while highlighting evidence favorable to the finding of nondisability"); *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987) (reversing where, among other things, ALJ erred by mischaracterizing the evaluation of a treating physician).

B.     Failure to describe specific functional limitations

The ALJ asserts that Ms. Ensign's October 2019 opinion and Mr. Zamora's March, August, and November 2019 opinions do not contain specific functional limitations and are therefore of limited persuasiveness (Ms. Ensign) or no persuasiveness (Mr. Zamora).

Ms. Ensign's opinion is quite specific. Ms. Ensign states that Plaintiff "leaves the house only for therapy and medical appointments," that Plaintiff's medication regimen causes "the side effects of drowsiness and fatigue," and that Plaintiff's "current symptoms prevent her from maintaining adequate social functioning including concentration, persistence, and the stamina to maintain employment." AR 1218-19. Ms. Ensign's opinion therefore includes detail sufficient to explain Plaintiff's abilities in the workplace: her opinion is expressed in the same terms that Social Security adjudicators use to determine cases. *E.g.*, POMS § DI 25020.010(B)(2) ("mental abilities needed for any job" include "[t]he ability to maintain concentration and attention for extended periods"; "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; and "[r]esponding appropriately to supervision, coworkers, and usual work situations"). Ms. Ensign opines that Plaintiff lacks these abilities and explains why, in terms more specific than "Plaintiff cannot work." They may be limitations the ALJ did not agree with, but they are functional limitations.

Mr. Zamora's March, August, and November opinions, while sparser than his January 2019 opinion to which the ALJ did not levy this criticism, are still sufficiently specific. For example, the opinions identify difficulty concentrating, panic attacks, and isolative behavior that will likely interfere with Plaintiff's ability to meet workplace responsibilities. AR 960, 1142, 1460. The ALJ found that these opinions are supported by treatment records, AR 20, and I find

that they describe limitations that clearly translate into an opinion on Plaintiff's ability to perform work-related functions.

        C.      <u>Inconsistency with evidence of improved function when Plaintiff complied with her medication regimen</u>

Plaintiff's treating therapists opined that Plaintiff cannot perform job duties in a way that will allow her to maintain consistent employment. The ALJ determined these opinions are inconsistent with evidence that Plaintiff's condition improves when she regularly takes her medication. AR 20. Although the ALJ's discussion on this topic is without citation to any records indicating improvement when Plaintiff takes her medication, earlier paragraphs in the ALJ's decision describe improvements Plaintiff made in late 2018 and early 2019 after taking medication. *See* AR 19 (chronicling Plaintiff's health history). During this time, Plaintiff states that her anxiety was an 8/10 without one medication, Seroquel, but improved to 5/10 with Seroquel. AR 19, citing AR 644. But this statement in the report is immediately followed by observations that Plaintiff "continues to have significant mood lability with black and white thinking, catastrophic thinking" and that Plaintiff had two instances of self-harm or cutting. AR 644. What Plaintiff considers a 5/10 is, in context, still a state of significant mental unwellness that may limit her ability to work. Similarly, the ALJ cites Plaintiff's February 2019 report of "a decrease in the amount of daily panic attacks from 10 or more per day, down to five to six"—but this improvement, while notable, provides no indication that a person experiencing five to six panic attacks per day can function in the workforce. AR 19. The simple statement that Plaintiff improved on medication does not contradict the providers' opinions that Plaintiff cannot perform job duties in a way that will allow her to maintain consistent employment.[6]

---

[6] Although Plaintiff does not make this argument and thus this would not be a basis for remand standing alone, I additionally note that Plaintiff's medication regimen was highly unstable. The types and doses of her medication changed frequently, which likely indicates that providers had

D.     <u>Inconsistency with mostly normal mental status examinations</u>

The ALJ states that Plaintiff's mental status examinations were mostly normal and that the treating providers' assessments were "somewhat inconsistent" with these results. AR 20. It is true that many aspects of the mental status examination results that the ALJ cited were normal, such as her judgment and insight. However, the providers' opinions in this case did not have anything to do with Plaintiff's judgment, insight, or other aspects of the mental status examinations that were "normal."

Ms. Ensign opined that Plaintiff struggled with leaving the house, dealing with stress, social functioning, concentration, persistence, and stamina. AR 1218-19. Mr. Zamora opined in January 2019 that Plaintiff had sought treatment for extreme emotional dysregulation, suicidal ideation, self-harm, and disruptions to general functioning and relationships and noted that she had no ability to complete a normal workday and workweek without interruption from psychologically based symptoms. AR 897-99. In March, August, and November 2019, he noted her anxiety, panic attacks, difficulty concentrating, and clinically elevated emotional sensitivity. AR 960, 1142, 1460. Plaintiff's mental status examinations, cited by the ALJ, all contained indications of anxiety or depression that *support* these opinions rather than undermine them. AR 1022 (affect "anxious, euthymic"), 1038 (mood "still really struggling," affect "anxious, restricted, dysthymic"), 1042 (mood "still really depressed," affect "[a]nxious, restricted, dysthymic"), 1051 (mood "a little more depressed," affect "anxious, restricted"). Ms. Ensign and

---

not yet established an appropriate regimen. *See, e.g.,* AR 433 (9/6/17: hydroxyzine, propanolol [sic], lamlrogine [sic]), 442 (10/18/17: Viibryd, lithium, hydroxyzine), 447 (11/9/17: lithium, hydroxyzine), 457 (1/9/18: hydroxyzine only), 462 (2/15/18: Seroquel), 467 (3/12/18: gabapentin, Seroquel), 469 (3/28/18: clomipramine, gabapentin, Seroquel), 475 (4/18/18: clomipramine, Seroquel), 477 (4/24/18: Luvox). It is therefore difficult to conclude that the ALJ's statement on this issue was supported by substantial evidence.

Mr. Zamora's findings are consistent with the results of the mental status examinations, which repeatedly categorize Plaintiff's mood and affect as anxious, depressed, restricted, or dysthymic.

E. <u>Inconsistency with GAF scores of 55</u>

The ALJ refers to Plaintiff's GAF scores of 55, referencing her scores and reports on July 10, 2018; February 19, 2019; May 2, 2019; and June 18, 2019. AR 1023, 1039, 1043, 1051. In addition to the GAF scores the ALJ references, I note a few others in the record:

| Date | Context | GAF Score | AR Page |
| --- | --- | --- | --- |
| 6/12/18, 6/13/18 | Hospitalized for suicidal ideation, depressive symptoms, and behavioral outbursts | 28 | 510, 513 |
| 6/14/18 | Discharged from hospital | 61-70 | 525 |
| 7/10/18 | Initial evaluation with Ms. Ensign | 55 | 1023 |
| 8/29/18 | Follow-up with Ms. Ensign | 55 | 1073 |
| 10/11/18 | Follow-up with Ms. Ensign | 55 | 1068 |
| 11/5/18 | Follow-up with Ms. Ensign | 50 | 1064 |
| 11/29/18 | Follow-up with Ms. Ensign | 55 | 1060 |
| 1/16/19 | Follow-up with Ms. Ensign | 55 | 1055 |
| 2/19/19 | Follow-up with Ms. Ensign | 55 | 1051 |
| 4/2/19 | Follow-up with Ms. Ensign | 55 | 1047 |
| 5/2/19 | Follow-up with Ms. Ensign | 55 | 1043 |
| 6/18/19 | Follow-up with Ms. Ensign | 55 | 1039 |
| 7/31/19 | Follow-up with Ms. Ensign | 49 | 1031 |

Given the numbers above, the ALJ's reference to Plaintiff's GAF scores of 55 was a mostly accurate reference to the record, although lower scores did occur before, during, and after the range of dates that the ALJ cited.

However, courts have repeatedly held that GAF scores have dubious usefulness when they are issued without an explanation as to their applicability in the workplace. *See, e.g., Butler v. Astrue*, 412 F. App'x 144, 147 (10th Cir. 2011) (unpublished) ("[B]ecause the GAF scores at issue were not linked to any work-related limitations, they are not particularly helpful."); *Eden v. Barnhart*, 109 F. App'x 311, 314 (10th Cir. 2004) (unpublished) (GAF score alone, without explanation linking it to ability to work, does not establish impairment that interferes with work

10

abilities); *Cainglit v. Barnhart*, 85 F. App'x 71, 75 (10th Cir. 2003) (unpublished) (same; GAF may indicate only problems in family or social context, not work); *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) (unpublished) (same).

While the cases casting doubt on the usefulness of GAF scores have traditionally worked against the claimant (i.e., in a context of a claimant putting forth low GAF scores as evidence of disability), doubt is doubt. If GAF scores do not dictate working abilities, such that a claimant with a low GAF score may still be able to work, then a claimant with a middling or higher GAF score may well be *unable* to work. And the theme from the cases above is that *unexplained* GAF scores don't mean much, because they do not necessarily refer to work-related functioning. Further, the explanation that does come with the scores the ALJ relied on indicates that Plaintiff is unable to work despite having a GAF of 55. Specifically, reports from Ms. Ensign—who assigned the majority of the GAF scores in the table above, and all of the scores the ALJ cites—support this interpretation: she issued frequent GAF scores of 55, yet she also opined that Plaintiff could not maintain even part-time employment a few months later on October 1, 2019. *See* AR 1218-19. Thus, the ALJ's reliance on GAF scores is not substantial evidence in this case to disregard the treating providers' opinions.

F.   Conclusion

Because the ALJ's reasons for assigning limited or no persuasiveness to the treating providers' opinions lacked substantial evidence, I recommend that the Court remand the issue for further proceedings before the ALJ. I recommend the Court decline to address Plaintiff's remaining claim of error because it may be affected by the ALJ's treatment of this case on remand. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

_____
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**